IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARRICKA LATONYA LOTTERY, | ) | CASE NO.  3:19-CV-01512-JGC |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES G. CARR |
| vs. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

Plaintiff, Darricka Latonya Lottery ("Plaintiff" or "Lottery"), challenges the final decision of Defendant, Andrew Saul,[1] Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On February 29, 2016, Lottery filed an application for SSI, alleging a disability onset date of February 10, 2016 and claiming she was disabled due to being deaf, being blind in the right eye, having

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of Social Security.

blurry vision in the left eye, stroke/heart attack, and a congenital heart condition.  (Transcript ("Tr.") 202, 219.)  The application was denied initially and upon reconsideration, and Lottery requested a hearing before an administrative law judge ("ALJ").  (Tr. 33.)

On August 21, 2018, an ALJ held a hearing, during which Lottery, represented by a non-attorney representative, and an impartial vocational expert ("VE") testified.  (*Id.*)  On October 30, 2018, the ALJ issued a written decision finding Lottery was not disabled.  (Tr. 33-44.)  The ALJ's decision became final on May 7, 2019, when the Appeals Council declined further review.  (Tr. 3-9.)

On July 2, 2019, Lottery filed her Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 19, 21.)  Lottery asserts the following assignments of error:

(1) The ALJ's determination that Ms. Lottery was not disabled under the Social Security Act was not based on substantial evidence.

(2) New and material evidence warrants remand under sentence six of section 205(g), 42 U.S.C. 405(g).

(Doc. No. 19 at 7, 9.)


## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Lottery was born in December 1972 and was 45 years-old at the time of her administrative hearing (Tr. 43), making her a "younger" person under Social Security regulations.  *See* 20 C.F.R. § 404.1563(c).  She has a limited education and is able to communicate in English.  (Tr. 43.)  She has no past relevant work.  (*Id.*)

2

**B.     Medical Evidence[2]**

   **1.     Pre-Decision Evidence**

On May 11, 2016, Lottery saw Karen Robie, Ph.D., for a consultative examination of her mental limitations.  (*Id.* at 285.)  During this examination, Lottery admitted working "under the table for her uncle who is an attorney."  (*Id.* at 286.)

On May 13, 2016, Lottery saw Sushil Sethi, M.D., for a physical consultative examination.  (*Id.* at 293.)  Lottery reported she was blind in the right eye and she "thinks that she can now only see through the left eye."  (*Id.*)  Dr. Sethi noted light seemed to bother Lottery.  (*Id.*)  On examination, Lottery's vision in her left eye was 20/70 without glasses.  (*Id.* at 294.)  Dr. Sethi opined Lottery's ability to sit, stand, walk, lift, carry, and handle objects would be slightly limited, she could carry 30 to 50 pounds occasionally, and her hearing, speaking, and traveling were normal.  (*Id.* at 295.)

On August 3, 2017, Lottery saw Dr. Melisa Nika for evaluation of blurred vision and a complete eye exam.  (Tr. 366.)  Lottery reported she was not using any eye drops at the time.  (*Id.*)  On examination, Dr. Nika found Lottery's visual acuity consisted of no light perception in her right eye and 20/50 perception in her left eye. (*Id.*)  Dr. Nika diagnosed Lottery with aphakic glaucoma, end stage in the right eye and indeterminate stage (but severe) in the left eye.  (*Id.* at 367.)  Dr. Nika noted Lottery's pressure in her left eye was too high and that Lottery "ha[d] not taken any drops due to insurance issues."  (*Id.*)  Dr. Nika ordered Lottery to return in one week for a pressure check.  (*Id.*)

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.  Further, as this appeal focuses only on Lottery's eyesight (Doc. No. 19 at 7-11), the Court limits its discussion to the medical evidence relevant to those impairments.

On May 11, 2018, Lottery saw Dr. Nika for a follow up visit. (*Id.* at 373.)  Lottery reported "decreased vision in the left eye since her last exam." (*Id.*)  On examination, Dr. Nika found Lottery's visual acuity in her left eye to be 20/40 -2, although she listed Lottery's vision as 20/50 in the left in her clinical summary. (*Id.* at 372-73.)  Dr. Nika's diagnoses consisted of primary open angle glaucoma in the left eye, indeterminate stage, blind hypertensive eye on the right, and aphakia. (*Id.*at 372.)  Dr. Nika ordered Lottery to return in three to four months for kinetic visual field testing in her left eye. (*Id.*)

On August 29, 2018, Lottery saw Dr. Hooman Harooni for visual field testing. (*Id.* at 374.) Lottery reported decreased vision and increased severity of her glaucoma. (*Id.*)  On examination, Dr. Harooni found Lottery's visual acuity consisted of no light perception in her right eye and 20/70 in her left eye. (*Id.* at 375.)  Dr. Harooni recorded the results of the visual field testing of Lottery's left eye as follows: "Octopus: Kinetic: III 4-e. generalized constriction. first field."[3]  (*Id.*)  Dr. Harooni noted Lottery admitted to running out of eye drops. (*Id.*)  Dr. Harooni emphasized the importance of treatment compliance and "the risk of loss of vision" if Lottery did not use the eye drops. (*Id.*)  Dr. Harooni ordered Lottery to return in three months for an examination by Dr. John Burchfield. (*Id.* at 376.)

That same day, Dr. Harooni wrote a letter certifying he had examined Lottery and found her to be "legally blind within the definition set forth below." (*Id.* at 352.)  No definition was included in his letter. (*Id.*)

### 2.    Post-Decision Evidence

On January 15, 2019, Lottery saw Philip Nelsen, M.D., for pain and decreased vision in her eyes. (*Id.* at 12.)  Dr. Nelsen explained to Lottery that her glaucoma is the biggest threat to her vision, and she

---

[3] More detailed results of Lottery's visual field testing are not included in her records.

must continue all glaucoma drops per Dr. Burchfield.  (*Id.*)  Dr. Nelsen's other diagnoses included retinal detachment, macular pucker, degenerative myopia of the left eye, and bilateral aphakia.  (*Id.* at 12-13.)

On January 25, 2019, Dr. Burchfield wrote a letter certifying he had examined Lottery and found her "to be blind within the definition set forth below."  (*Id.* at 10.)  The bottom of the letter set forth the following definition of blindness: "The term 'blind individual' means an individual whose central visual acuity does not exceed 20/200 in the better eye with correcting lenses, or whose visual acuity is greater than 20/200 but is accompanied by a limitation in the field of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees. (section 23(y) of the Revenue Act of 1944)."  (*Id.*)

Lottery submitted this evidence to the Appeals Council.  (*Id.* at 8-20.)  The Appeals Council determined "[t]his additional evidence [did] not relate to the period at issue," February 10, 2016 through October 30, 2018, the date of the ALJ's decision.  (*Id.* at 4.)  "Therefore, it [did] not affect the decision about whether [Lottery was] disabled beginning on or before October 30, 2018."  (*Id.*)  If Lottery wanted the Social Security Administration to consider whether she was disabled after October 30, 2018, she needed to file a new application.  (*Id.*)

## C.    State Agency Reports

On March 31, 2017, Angela Bucci, D.O., determined there was insufficient evidence on file to "verify" Lottery's "identification and the severity of" her physical allegations.  (*Id.* at 116.)

On July 27, 2017, Elizabeth Das, M.D., on reconsideration, found there was insufficient evidence on file to "verify" Lottery's "identification and severity of" her physical allegations.  (*Id.* at 133.)

**D.**     **Hearing Testimony**

During the August 21, 2018 hearing, Lottery testified to the following:

- She lives in a house with a basement, a first floor, and third-floor attic.  (*Id.* at 61.)
No one goes in the attic.  (*Id.*)  She sleeps upstairs.  (*Id.*)  She lives by herself with her
dog.  (*Id.* at 65.)  Her house has running water, but she has no electricity because she
has no money.  (*Id.* at 84.)

- Her elderly neighbor, John, takes her clothes and does her laundry.  (*Id.* at 62.)  She
could do her own laundry.  (*Id.*)  She does not have a driver's license.  (*Id.* at 65.)  She
takes the bus or a cab to get around, or John will drive her to where she needs to go.
(*Id.*)  She does not leave the house very often.  (*Id.* at 66.)  She grocery shops, and she
can cook.  (*Id.* at 73-74.)  She would like to skate if she could see.  (*Id.* at 74.)

- She could see the ALJ a little bit, "just straight up."  (*Id.* at 67.)  She had cataracts and
glaucoma in her eye.  (*Id.* at 68.)  She went "totally blind" in the 11th grade.  (*Id.* at
70.)  She was not wearing glasses at the hearing.  (*Id.* at 82.)  She testified, "Once you
have high definition glasses, you can't never see no more.  You got to have the right
ones.  And the insurance won't cover it."  (*Id.* at 72.)

- She can read and write.  (*Id.* at 70.)  She was in special education all her life.  (*Id.*)

- She had not worked other than putting together files for her uncle, who was a lawyer.
(*Id.* at 71.)

The ALJ found no past work.  (*Id.* at 86.)  The ALJ then posed the following hypothetical question:

> [P]lease assume an individual with the claimant's age, education, and
> experience; has the residual functional capacity for work at all exertional
> levels; can understand, remember, and carry out simple instructions,
> perform simple, routine, and repetitive tasks but not at a production rate
> pace, such as an assembly line, adapt to routine changes in the work place
> that are infrequent and easily explained, interact occasionally with
> supervisors, coworkers, and the general public.
>
> Are there occupations that such an individual could perform?

(*Id.* at 86-87.)

6

The VE testified the hypothetical individual would be able to perform representative jobs in the economy, such as cleaner (at both medium and light exertional levels) and packer (at medium, light, and sedentary levels).  (*Id.* at 87.)

The ALJ added an additional limitation that the hypothetical individual would be limited to environments not requiring loud noises.  (*Id.*)  The same jobs remained, although the VE needed to adjust the number of jobs available and change the DOT codes for the packer jobs at medium and sedentary. (*Id.* at 87-88.)

The ALJ added a further limitation that the hypothetical individual could not perform "any occupations requiring binocular vision or manipulation of small objects."  (*Id.* at 88.)  The VE testified that it would not have any impact on the cleaner jobs or the packer jobs at the medium and sedentary levels but would reduce the number of packer jobs at the light level slightly.  (*Id.*)

### III.   STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. § 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. § 416.920(c).  A "severe impairment" is one that

"significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. § 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. § 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since February 10, 2016, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: obesity, bilateral sensorineural hearing loss, bilateral aphakic glaucoma, and depression.  (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: She can have no exposure to loud noises or engage in jobs requiring binocular vision or manipulation of small objects.  She can understand, remember and carry out simple instructions.  She is able to perform simple, routine and repetitive tasks, but not at a production rate pace, such as an assembly line.  Finally, she can adapt to infrequent

8

changes in the workplace that are easily explained, and can interact occasionally with supervisors, coworkers, and the general public.

5. The claimant has no past relevant work (20CFR 416.965).

6. The claimant was born on December **, 1972 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 10, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 35-44.)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y*

9

*of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir.2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

10

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

### A. Step Three Challenge

Lottery argues "substantial evidence does not support the ALJ's decision that [she] did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404." (Doc. No. 19 at 7.) First, Lottery asserts the "ALJ failed to consider substantial evidence in the form of medical records that tend to prove [Lottery] is and was legally blind." (*Id.*) Second, Lottery maintains the ALJ "failed to consider how" Dr. Harooni's August 2018 letter "may **'medically equal'**" Listings 2.02 and 2.03. (*Id.* at 8) (emphasis in original).

The Commissioner first maintains that because Lottery admitted to performing some work in 2016, she "was by definition disqualified from meeting the Listing." (Doc. No. 21 at 3.) The Commissioner further argues "the ALJ correctly found [Lottery] does not qualify because she has not met the criteria of any listing" and the ALJ "thoroughly analyzed the evidence [Lottery] points to." (*Id.* at 3, 5.) Regarding

11

whether Lottery medically equaled a listing, the ALJ minimally articulated that Lottery did not equal a Listing and Lottery "has not shown how she could have equaled the Listing." (*Id.* at 7.)

At the third step in the disability evaluation process, a claimant will be found disabled if her impairment meets or equals one of the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). Essentially, a claimant who meets the requirements of a Listed Impairment, as well as the durational requirement, will be deemed conclusively disabled and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 416.925(c)(3). It is the claimant's burden to bring forth evidence to establish that her impairments meet or are medically equivalent to a listed impairment. *See e.g. Lett v. Colvin*, No. 1:13 CV 2517, 2015 WL 853425, at *16 (N.D. Ohio Feb. 26, 2015). A claimant must satisfy all of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant is also disabled if her impairment is the medical equivalent of a listing, 20 C.F.R. § 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

Where the record raises a "substantial question" as to whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments

12

in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414-15 (6th Cir. 2011). In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his decision. *Id.* at 416.

Moreover, "the ALJ's lack of adequate explanation at Step Three can constitute harmless error where the review of the decision as a whole leads to the conclusion that no reasonable fact finder, following the correct procedure, could have resolved the factual manner in another manner." *Lett,* 2015 WL 853425, at \*16. *See also Ford v. Comm'r of Soc. Sec.*, No. 13-CV-14478, 2015 WL 1119962, at \*17 (E.D. Mich. Mar. 11, 2015) (finding that "the ALJ's analysis does not need to be extensive if the claimant fails to produce evidence that he or she meets the Listing"); *Mowry v. Comm'r of Soc. Sec.*, No. 1:12-CV-2313, 2013 WL 6634300, at \*8 (N.D. Ohio Dec. 17, 2013); *Hufstetler v. Comm'r of Soc. Sec.*, No. 1:10CV1196, 2011 WL 2461339, at \*10 (N.D. Ohio June 17, 2011).

Here, the ALJ provided the following discussion at Step Three:

> While the claimant's impairments are severe, the record does not specifically establish that the claimant has an impairment that medically meets or equals the severity requirements of any listed impairment. I have examined and considered all listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, with specific attention to Listings 2.02 (loss of central visual acuity), 2.03 (contraction of the visual field in the better eye), 2.10 (hearing loss not treated with a cochlear implant), and 12.04 (depressive, bipolar and related disorders).
>
> With respect to the claimant's vision impairments, I note that while the claimant has no light perception in the right eye, her visual acuity in the left eye, as recently as August 29, 2018, was 20/60 to 20/70 without correction. (Exhibit 9F/12). Additionally, while her doctor opined that the claimant was "legally blind," this, in and of itself, is insufficient to meet the requirements of listing 2.02. (Exhibit 7F/2). This is because listing 2.02 requires a visual

13

acuity of 20/200, legal blindness, in the *best* eye *with correction.* (Emphasis added).  As noted, the most recent records indicate that, in her best eye, *without correction,* her visual acuity was 20/60 to 20/70.  Moreover, while Kinetic visual field testing was performed, it was noted to show "generalized constriction," without mention of visual field efficiency percentage, the widest diameter around the point of fixation, or MD decibels, as required by 2.03. Therefore, I find that the claimant's visual impairments do not meet the requirements of listings 2.02 or 2.03.

(Tr. 36) (emphasis in original).

The ALJ then provided additional discussion of Dr. Harooni's examination and letter in the RFC analysis:

On August 29, 2018, the claimant was seen by Dr. Harooni, who indicated that the claimant was legally blind and that her condition was irreversible. (Exhibit 7F/2).  Contemporaneous office records indicate that the claimant continued to have no light perception out of her right eye and her visual acuity was 20/60 to 20/70 in the left eye. (Exhibit 9F/11-13).  Kinetic testing demonstrated generalized constriction of the first field in the left eye.  (Id.).  Assessment was aphakic glaucoma bilaterally with controlled intraocular pressure, though the claimant generally admitted to running out of drops.  (Id.).  The importance of compliance and risk of loss of vision in the absence of same was again discussed, and she was provided with additional samples.  (Id.).

(*Id.* at 40.)

As set forth *supra*, Dr. Harooni's letter did not include a definition of "legally blind."  Lottery asserts "it is reasonable to believe that Dr. Harooni arrived at his conclusion according to the commonly-used standard set forth in 20 C.F.R. 404.1581."  (Doc. No 19 at 8.)

Under 20 C.F.R. § 416.981, which applies to SSI claims, the Social Security Agency defines "statutory blindness" as "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens.  An eye which has a limitation in the field of vision so that the widest diameter of the

14

visual field subtends an angle no greater than 20 degrees is considered to have a central visual acuity of 20/200 or less." The Social Security Agency has explained that a claimant has statutory blindness "only if [the claimant's] visual disorder meets the criteria of 2.02 or 2.03A." 20 C.F.R. Part 404, Subpt. P, Appendix 1, § 2.00(A)(2)(c). A claimant does not have "statutory blindness" if the claimant's "visual disorder medically equals the criteria of 2.02 or 2.03A or meets or medically equals the criteria of 2.03B, 2.03C, 2.04A, or 2.04B" because the claimant's disability "is based on criteria other than those in the statutory definition of blindness." (*Id.*)

The Court finds substantial evidence supports the ALJ's conclusion that Lottery does not meet the requirements of Listing 2.02. Listing 2.02 provides:

> *2.02 Loss of Central Visual Acuity.* Remaining vision in the better eye after best correction is 20/200 or less.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §2.02. As Lottery admits, she has vision in her better eye, without correction, of 20/70. (Doc. No. 19 at 8.)

The Court also finds substantial evidence supports the ALJ's conclusion that Lottery does not meet the requirements of Listing 2.03. Listing 2.03 provides:

> Contraction of the visual field in the better eye, with:
>
> A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees.
>
> OR
>
> B. An MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d).
>
> OR

15

C.  A visual field efficiency of 20 percent or less, determined by kinetic perimetry (see 2.00A7c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §2.03.  The Social Security Agency makes clear that for evaluation under 2.03A, the Agency "need[s] the results of a visual field test that measures the central 24 to 30 degrees of your visual field."  20 C.F.R. Part 404, Subpt. P, Appendix 1, § 2.00(A)(6)(c).  As Lottery admits, her medical records do not contain any detailed results of her visual field testing beyond the statement in Dr. Harooni's treatment notes stating: "Octopus: Kinetic: II 4-e. generalized constriction. first field."  (Doc. No. 19 at 3) (quoting Tr. 375) (internal quotation marks omitted).  As the ALJ found, these records fail to mention Lottery's visual field efficiency percentage, the widest diameter around the point of fixation, or MD decibels, and therefore are insufficient to show Listing 2.03 was met.  Moreover, as the Commissioner points out, the ALJ was not required to give any credence to Dr. Harooni's blanket assertion that Lottery was "legally blind," as whether a listing is met is an issue reserved to the Commissioner.  20 C.F.R. § 416.927(d)(2).

Lottery asserts, "The responsibility of ensuring that her doctor records every detail of her medical condition and identifying what medical evidence is withheld, cannot reasonably fall on her shoulders." [4] (Doc. No. 19 at 9.)  But it is Lottery's burden to prove she has an impairment or combination of impairments which medically equals a listing. *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004).  Indeed, Lottery "must present specific medical findings that [her] impairment meets the applicable impairment or present medical evidence that describes how [her] impairment is equivalent to a

---

[4] The Court notes Lottery did not represent herself at the hearing – she was represented by a non-attorney representative.  (Tr. 33.)

16

listed impairment."  *Id.  See also Blanton v. Social Sec. Adm.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("It is a claimant's burden at the third step of the evaluation process to provide evidence that she meets or equals a listed impairment.") (citations omitted).   While Lottery offers her "reasonable" interpretation of Dr. Harooni's 2018 letter and examination records (Doc. No. 9 at 8), the ALJ considered and discussed this evidence in detail and found, as Lottery acknowledges (*id.*), that pieces of information necessary to meet or equal the listings were missing.  (Tr. 36, 40.)  "Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached," *Her*, 203 F.3d at 389-90, as it does here.  Further, Lottery does not assert the evidence shows she equals one of these Listings – she argues the ALJ failed to consider that this evidence shows she "*may*" equal one of these Listings.  (*Id.* at 8) (emphasis added).  This is incorrect: the ALJ considered this evidence in determining Lottery did not meet or medically equal a listing.

The ALJ specifically found "the record [did] not specifically establish that the claimant has an impairment that medically meets or equals the severity requirements of any listed impairment."  (Tr. 36.) Minimal articulation is all that is required.  *See Morris v. Sec'y of Health & Human Servs.*, 845 F.2d 326 (Table), 1988 WL 34109, at *2 (6th Cir. 1988); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) ("[T]he ALJ expressly found that Malone did not have an impairment or combination of impairments that was equal or equivalent  to any of the impairments that are described in Appendix I.  This finding is supported by substantial evidence . . .").  To the extent Lottery faults the ALJ's conclusion sentence, "Therefore, I find that the claimant's visual impairments do not meet the requirements of listings 2.02 or 2.03" because it did not include "or equal" after "meet," a perfect opinion is not required.  *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative

17

law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") (citations omitted); *see also NLRB v. Wyman–Gordon Co.,* 394 U.S. 759, 766 n.6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (when "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.").  The Court notes Lottery makes no argument that the ALJ failed to comply with SSR 96-6p.[5]  (*See* Doc. No. 19 at 7-9.)   Thus, the Court finds the ALJ's conclusion Lottery did not meet or equal Listings 2.02 and 2.03 is supported by substantial evidence.

Accordingly, it is recommended the Court find the ALJ did not err in his Step Three analysis.  This assignment of error is without merit.

**B.    Sentence Six Remand**

Lottery argues this case should be remanded under sentence six for consideration of "another Certificate of Blindness and additional medical records from January 2019," which Lottery submitted to the Appeals Council on appeal.  (Doc. No. 19 at 9.)  Lottery asserts, "This additional evidence satisfies all of the requirements under sentence six of section 205(g)."  (*Id.*)  The Commissioner argues Lottery has not met either element required for a sentence six remand.  (Doc. No. 21 at 8-9.)

The Sixth Circuit has repeatedly held "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  A district court can, however, remand the case for further

---

[5] POLICY INTERPRETATION RULING TITLES II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT BY STATE AGENCY MEDICAL AND PSYCHOLOGICAL CONSULTANTS AND OTHER PROGRAM PHYSICIANS AND PSYCHOLOGISTS AT THE ADMINISTRATIVE LAW JUDGE AND APPEALS COUNCIL LEVELS OF ADMINISTRATIVE REVIEW; MEDICAL EQUIVALENCE, 1996 WL 374180 (July 2, 1996).

administrative proceedings in light of such evidence, if a claimant shows the evidence satisfies the standard set forth in sentence six of 42 U.S.C. § 405(g). *Id. See also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996); *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013) (stating that "we view newly submitted evidence only to determine whether it meets the requirements for sentence-six remand").  Sentence Six provides that:

> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).

Interpreting this statute, the Sixth Circuit has held that "evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan*, 496 U.S. at 626).  Evidence is "material" only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs*., 865 F.2d 709, 711 (6th Cir. 1988)).  *See also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) (noting that evidence is "material" if it "would likely change the Commissioner's decision."); *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012) (same).  Evidence is not material if it is cumulative of evidence already in the

19

record, or if it merely shows a worsening condition after the administrative hearing.  *See Prater v. Comm'r of Soc. Sec.*, 235 F. Supp. 3d 876, 880 (N.D. Ohio Feb. 14, 2017).  *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003); *Sizemore*, 865 F.2d at 712 ("Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition"); *Deloge v. Comm'r of Soc. Sec.*, 540 F. App'x 517, 519-20 at *3 (6th Cir. 2013) (same).  Similarly, "[t]o be material, the evidence must relate to the time period at issue – i.e., from the alleged onset date through the date of the ALJ's decision."  *Malanowksi v. Comm'r of Soc. Sec.*, No. 1:13CV763, 2014 WL 2593960, at *10 (N.D. Ohio June 10, 2014) (citing *Casey v. Sec'y of Helath & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 685 (6th Cir. 1992)).

In order to show "good cause," a claimant must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 279 F.3d at 357.  *See also Willis v. Sec'y of Health & Hum. Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).  "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement."  *Courter*, 479 F. App'x at 725.  Rather, the Sixth Circuit "takes 'a harder line on the good cause test' with respect to timing, and thus requires that the clamant 'give a valid reason for his failure to obtain evidence prior to the hearing.'"  *Id.* (quoting *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986)).  This includes "detailing the obstacles that prevented the admission of the evidence."  *Courter*, 479 F. App'x at 725.  *See also Bass*, 499 F.3d at 513.

The burden of showing that a remand is appropriate is on the claimant.  *See Foster*, 279 F.3d at 357; *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010).  When a district court grants remand pursuant to sentence six, it "neither affirm[s] nor reverse[s] the ALJ's decision, but simply

20

remand[s] for further fact-finding." *Courter*, 479 F. App'x at 725.  *See also Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).  Under these circumstances, the district court retains jurisdiction and enters final judgment only "after postremand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).  *See also Melkonyan*, 501 U.S. at 98; *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 841 (6th Cir. 2006).

The Court finds Lottery has not demonstrated a sentence six remand is appropriate.  This evidence is "new," as it post-dates both the administrative hearing and the ALJ decision.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 734 (N.D. Ohio June 14, 2005).  However, Lottery must also demonstrate the materiality of this evidence.  First, this evidence post-dates the period at issue – February 10, 2016 (the alleged onset date) through October 30, 2018 (the date of decision).  These records "pertain to Plaintiff's condition after the date of the ALJ's decision" and do not relate back in time.  *Malanowksi*, 2014 WL 2593960, at *10.  Therefore, the evidence cannot be material.  *Id.*  Second, Lottery has not shown that this evidence would have created a "reasonable probability that the ALJ would have rendered a different decision." *Cross*, 373 F. Supp. 2d at 734.  As Lottery contends earlier in her brief, the 2019 letter from Dr. Burchfield "is nearly identical to the letter that Dr. Harooni wrote in August 2018," except Dr. Burchfield's letter contains a definition of legal blindness.  (Doc. No. 19 at 4.)  The Commissioner agrees the 2019 letter from Dr. Burchfield is "essentially identical" to Dr. Harooni's August 2018 letter, albeit with the addition of a definition of legal blindness.  (Doc. No. 21 at 8.)  But, as the Commissioner points out, the "medical portion" of both letters was the same, and Lottery fails to identify any "new evidence that the constriction of her visual field met any quantifiable measurement that would establish disability

based on blindness." (*Id.* at 9.)  As the ALJ explained in his decision, "Additionally, while [Lottery's] doctor opined that she was 'legally blind,' this, in and of itself, is insufficient to meet the requirements of listing 2.02."  (Tr. 36.)  As a result, the 2019 letter and medical records are "merely cumulative" of Dr. Harooni's August 2018 letter and medical records and would not have changed the ALJ's decision in this case.  Therefore, Lottery fails to show the evidence was material as required for a remand under sentence six.

Even assuming the evidence was new and material as required by the first prong of a remand under sentence six, Lottery fails to show good cause for her failure to present the information to the ALJ. Lottery concedes she had representation at the hearing level, but argues the representative was not an attorney and "there were communication issues" between her and her representative.  (Doc. No. 19 at 10.) But even if true, these facts do not establish good cause.  First, "non-attorney status alone is insufficient to find good cause to justify [Lottery's] failure to submit such evidence to the ALJ." *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 718 (6th Cir. 2013).  Second, Lottery's representative timely submitted medical records to the ALJ before the date of decision.  The crux of the issue appears to be, as Lottery acknowledges, that Lottery and her representative, "to the best of their knowledge," thought they had submitted sufficient evidence to show Lottery met or equaled a Listing (Doc. No. 19 at 10), and the ALJ found that not to be the case.  But the Sixth Circuit has rejected this argument: "A belief that one would not 'lose' given the evidence admitted cannot meet the 'good cause' standard for failing to obtain or submit all useful evidence in the first instance." *Courter*, 479 F. App'x at 726.

For all the reasons set forth above, the Court finds Lottery failed to meet her burden to prove a sentence six remand is warranted.

22

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.


Date:  May 5, 2020                                    _s/ Jonathan Greenberg_
                                                      Jonathan D. Greenberg
                                                      United States Magistrate Judge


## <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**